UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AUBREY STANLEY,

    Plaintiff,

v.

                                                                                          Case No. 2:09-cv-25
                                                                                          HON. ROBERT HOLMES BELL

DOUGLAS MASON, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Aubrey Stanley, an inmate currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Corrections Officer Douglas Mason, Assistant Resident Unit Manager Thomas Salo, and Hearing Officer Linda Maki.

Plaintiff's complaint alleges that on June 5, 2007, he received a false major misconduct ticket for threatening behavior from Corrections Officer D. Weberg. Plaintiff asserts that the ticket was in retaliation for Plaintiff's use of the grievance process. Plaintiff prepared for the hearing and on June 15, 2007, Defendant Mason came to escort Plaintiff to the hearing, stating that the Hearing Officer was waiting. Plaintiff was wearing a state issued t-shirt and orange shorts, as well as state issued black shoes. Defendant Mason told Plaintiff that he was supposed to be wearing his "state blues." Defendant Salo, who had come to the cell, asked if the rules required Plaintiff to be wearing state blues.

Plaintiff told Defendant Salo that he wanted to go to his hearing, that the ticket was retaliatory, and that Defendant Mason could not prevent him from attending. Defendant Salo told Plaintiff that if he put some "blues" on, he would have someone come get Plaintiff and take him to the hearing. Plaintiff states that an hour went by, but no one came to take him to the hearing. On June 15, 2007, Plaintiff received a copy of the hearing report, in which Defendant Maki purported to have heard Defendant Mason repeatedly tell Plaintiff to get dressed and Plaintiff arguing about it. On June 19, 2007, Plaintiff filed a grievance, which was denied because Plaintiff was not properly dressed for attending the hearing, was given ample time to dress, and refused to do so. Plaintiff also claims that he should have been given a written waiver of his right to attend the major misconduct hearing.

Plaintiff claims that Defendants' actions violated his rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiff is seeking compensatory damages, as well as equitable relief.

Presently before the Court is the Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and

admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants state that they are entitled to summary judgment on Plaintiff's Fourteenth Amendment due process claims because Plaintiff was given an opportunity to be heard at his hearing, which Plaintiff refused by failing to dress appropriately. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. *Zinermon v. Burch*, 494 U.S. 113, 127-28, 110 S. Ct. 975, 984 (1990).

Prison inmates subject to serious disciplinary action are entitled to (1) 24 hours advance written notice of the charges; (2) an opportunity to appear at a hearing, to call witnesses, and present rebuttal evidence when permitting the inmate to do so will not be unduly hazardous to

institutional safety; and (3) a written statement by the factfinders as to the evidence relied upon for their decision which includes a statement as to the reasons for the decision. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). If the prisoner received these procedural protections, and if there were "some facts" to support the decision of the hearings officer, then the prisoner received all the process to which he was due. *Superintendent of Massachusetts Institute, Walpole v. Hill*, 472 U.S. 445 (1985).

In his affidavit, Defendant Mason attests that on June 15, 2007, he went to Plaintiff's cell and told him to dress in his state blues for a major misconduct hearing because Hearing Officer Maki would be arriving soon. Approximately fifteen minutes after Hearing Officer Maki arrived on the unit, Defendant Mason went to get Plaintiff and found him wearing orange shorts and a t-shirt. Defendant Mason observed a pair of state blues on the bed, and told Plaintiff to put his pants on for major court. Plaintiff stated that he could come out any way he liked, even in his underwear. Defendant Mason told Plaintiff that he must be wearing state blues for any callout, and that if he did not put his pants on, it would be considered a refusal to attend major court. Plaintiff began to yell to Defendant Salo that he could come out any way he wanted. Defendant Mason walked away from Plaintiff's cell, but returned once more and told Plaintiff that he was giving him one more chance. Defendant Mason then asked if Plaintiff was going to put his state blue pants on or if he was refusing to attend court. Plaintiff responded that he would not put his pants on and that he could attend court dressed any way he liked. Defendant Mason then informed Hearing Officer Maki that Plaintiff had refused to put his pants on for court despite being given three opportunities to comply with this requirement. Plaintiff was directed to read MDOC Operating Procedure 04.07.110 - Attachment B, "Wearing State - Issued Clothing," which specifies that state issued athletic clothing may not be worn on assignments, but is only for athletic activities, during yard and in the housing unit.

Attendance at major misconduct court is considered an assignment (callout). (Defendants' Exhibit A, ¶¶ 3-7.)

In his affidavit, Defendant Salo attests that housing unit rules at LMF do not permit prisoners to wear shorts to a major misconduct hearing and that he did not instruct Defendant Mason in any manner on June 15, 2007. (Defendants' Exhibit B, ¶¶ 3-5.) Defendants offer a copy of the housing unit rules, as well as a copy of MDOC Operating Procedure 04.07.110 - Attachment B in support of their motion for summary judgment. (Defendants' Exhibits A-1 and B-1.)

In her affidavit, Defendant Maki attests that it is up to the hearing officer to determine whether a prisoner has waived his right to attend his hearing. According to the Hearings Handbook, if a prisoner refuses to appear at a hearing after proper notice has been given, the hearing officer may proceed to make a decision on the basis of the misconduct report and any other available evidence and may find the prisoner guilty. Defendant Maki also states that there is no requirement for a signed waiver. (Defendants' Exhibit D, pp. 3-5, ¶¶ 8-12.)

In the hearing report, Defendant Maki states in the "evidence / statements in addition to misconduct report" that:

> Hearing Officer heard Mason telling the prisoner repeatedly to get dressed appropriately - shorts would not be permitted - and the prisoner arguing about it. At 0902 Mason informed the Hearing Officer that the prisoner was told three times to get his pants on and he refused to do so. Prisoner had been warned about getting ready 15 minutes before this. No reason to doubt the officer. Prisoner waived his right to attend his hearing by his refusal to dress appropriately as directed by the officer. Misconduct report, investigator report, prisoner's statement and responses from Brock examined. Plea of not guilty entered for the prisoner.

(Defendants' Exhibit C-3.)

A review of the record indicates that Plaintiff was afforded the due process protections specified by the Court in *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). Contrary to Plaintiff's assertion, he does not have the right to attend his hearing in any sort of attire he deems appropriate. His entitlement is merely to attend the hearing. The record shows that Plaintiff was given ample opportunity to attend his hearing, but refused to dress appropriately, thereby waiving his right to be present. Accordingly, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's due process claims.

Defendants also state that they are entitled to summary judgment on Plaintiff's equal protection claims because these claims are unsupported by any specific factual allegations. The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. As we have explained, "to withstand Fourteenth Amendment scrutiny, statutes that do not interfere with fundamental rights or single out suspect classifications must bear only a rational relationship to a legitimate state interest." *Jackson v. Jamrog,* 411 F.3d 615, 618 (6th Cir. 2005) (quoting *Richland Bookmart, Inc. v. Nichols,* 278 F.3d 570, 574 (6th Cir. 2002)).

In Plaintiff's complaint, he states that Defendants acted with "racial animus." However, Plaintiff fails to allege any specific facts in support of this assertion. To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the opinion of the undersigned, Plaintiff has failed to allege any facts showing that he was treated differently from other similarly situated persons. Therefore, Defendants are entitled to summary judgment on Plaintiff's equal protection claims.

Finally, Defendants claim that they are entitled to summary judgment on Plaintiff's retaliation claims because it is entirely conclusory. The filing of grievances is constitutionally-protected conduct for which a prisoner cannot be retaliated against. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Conclusory allegations of retaliatory motive "with no concrete, relevant particulars" fail to raise a genuine issue of fact for trial. *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. Apr. 10, 1992); *see also Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). In his complaint, Plaintiff states that he was retaliated against because of his use of the grievance process. However, Plaintiff

fails to allege any specific facts in support of this claim. Accordingly, his speculative allegation fails to state a claim.

Defendants note that Plaintiff also appears to be asserting a conspiracy claim. Defendants state that they are entitled to dismissal of this claim because they did not engage in any unconstitutional activity. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989); *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985). In order to prove a civil conspiracy, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, and that an overt act was committed in furtherance of the conspiracy. *Moore*, 890 F.2d at 834; *Hooks*, 771 F.2d at 943-944. Plaintiff has failed to allege any facts in support of the existence of a single plan. Therefore, the undersigned recommends dismissal of this claim.

Defendants also correctly note that Defendant Maki is entitled to absolute judicial immunity. The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). Plaintiff's claims against Defendant Maki fail because she is absolutely immune under the circumstances of this case.

Defendants Mason and Salo alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendants Mason and Salo are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendants' motion for dismissal and/or summary judgment (Docket #16) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same

reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: February 16, 2010