UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AUBREY STANLEY,

        Plaintiff,

                                                            File No. 2:09-cv-25

v.

                                                             HON. ROBERT HOLMES BELL

DOUGLAS MASON, et. al.,

        Defendants.
                                           /

**MEMORANDUM OPINION AND ORDER**
**ADOPTING THE REPORT AND RECOMMENDATION**

This is a prisoner civil rights action brought by *pro se* Plaintiff Aubrey Stanley pursuant to 42 U.S.C. § 1983. On February 16, 2010, the Magistrate Judge issued a Report and Recommendation ("R&R"), recommending that this Court grant the motion to dismiss and/or for summary judgment filed by Defendants Douglas Mason, Thomas Salo, and Linda Maki. (Dkt. No. 34, R&R.) Plaintiff filed objections to the R&R on March 2, 2010. (Dkt. No. 35.)

This Court makes a de novo determination of issues in an R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

## I. Background

On June 15, 2007, Plaintiff was confined at the Alger Maximum Correctional Facility. According to Plaintiff, Defendant Mason, a Resident Unit Officer at the facility, arrived at Plaintiff's cell to escort him to a major misconduct hearing. Plaintiff's affidavit asserts, in relevant part:

> 7. . . . RUO Mason came to my cell and asked if I was ready for court. I said, "Yeah." Mason then told me that the hearing officer was not in the unit yet, and that he would be back to get me when she arrived. Mason then left my cell front.
>
> 8. Later, RUO Mason returned and asked me, "Are you ready for court?" I said, "Yeah." And got up of my bunk and waked to the cell door so that I could be placed into restraints. Mason then said, "Yeah, you're ready, as ready as you'll ever be." He then opened that slot, and stood in front of the door staring at me. He did not make an attempt to place me in restraints. I then stated, "Man, what's up Mason? Are you still on that homosexual shit, man, I told you to stop playing with me like that, I don't get down like that. Mason looked directly at me, and said, "Who me? I don't know what you're talking about!"
>
> 9. I then heard [Assistant Resident Unit Supervisor] Salo talking with another prisoner and called to him, saying, "Salo, tell Mason to stop playing with me!" Mason appeared angry. His face turned red and contorted. He immediately closed my door's slot, took the key out and told me that I wasn't ready for court. I said, "I'm not ready? What do you mean, I'm not ready?" Mason then walked off.
>
> 10. I attempted to explain the situation to Salo, and Salo asked Mason, "Why he's not ready?" Salo stepped to my cell window and looked inside at me and stated to Mason, "He looks ready to me." At that time I was wearing my state issued orange shorts, t-shirt and black segregation shoes, in addition to my underclothes.
>
> 11. Mason stated to Salo, "He's not dressed." Salo replied, "What's he supposed to have on?" Mason retorted, "State blue pants!" I interjected, "That not in the rules!" Salo then asked Mason, "Where is that in the rules? He's dressed!" I said, "That's not in the rules." Mason stated, "It's what I stated you have to have on!" Then Mason walked off and went upstairs.

12. I told ARUS Salo that I wanted to go to my hearing, that the ticket was written in retaliation, and that Mason could not deny me that right. I also told Salo, "I told him like I told you Salo, several times before to stop playing homosexual games with me and to stop playing with me."

13. Salo stated, "Put some blues on and I'll have them come and get you Stanley." He then left.

14. I immediately pulled my state blue pants and shirt out of my footlocker, walked to the door and attempted to get an Salo's attention, saying "Salo, I'm ready for my hearing, I wanna go to my hearing Salo."

. . .

18. At no time did Mason direct me to put on my state blues.

(Dkt. No. 32, Pl.'s Aff. (errors in original).) According to Plaintiff, no one came to take him to his misconduct hearing, which was ultimately conducted in his absence. Plaintiff contends that his Fourteenth Amendment right to due process was violated because he was not afforded the opportunity to be present at the misconduct hearing. Plaintiff also contends that Defendants denied him the right to attend his misconduct hearing in retaliation for his exercise of his First Amendment right to file grievances. The R&R recommends granting summary judgment in favor of Defendants as to Plaintiff's Fourteenth Amendment claim and dismissing Plaintiff's First Amendment retaliation claim for failure to state a claim.[1] (Dkt. No. 34, R&R 6-8.)

Plaintiff makes the following objections to the R&R: (1) considering the prison rules,

---

[1] Plaintiff stated several other claims in his complaint, including equal protection claims. The R&R recommends granting Defendants' motion as to these claims. Plaintiff does not raise any specific objection to those recommendations, and the Court discerns no error in the reasoning and conclusions of the R&R with respect to these claims.

there is a factual dispute as to whether attendance at a misconduct hearing is considered an assignment requiring prisoners to wear their state-issued slacks rather than athletic shorts; (2) considering the prison rules, there is a factual dispute as to whether a signed waiver is necessary to waive the right to attend a misconduct hearing; (3) based on Plaintiff's affidavit, there is a factual dispute as to whether Plaintiff had ample opportunity to dress appropriately for his hearing; (4) considering the prison rules and Plaintiff's affidavit, Plaintiff has stated a retaliation claim; and, (5) considering the prison rules, Defendants are not entitled to qualified immunity.

## II. Analysis

### A. Fourteenth Amendment claim

Due process requires, inter alia, that prisoners subject to a major misconduct charge be given an opportunity to present evidence at a hearing. *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974); *Thomas v. Van Ochten*, No. 94-1549, 1995 WL 49126, at *2 (6th Cir. Feb. 7, 1995) (unpublished) ("An inmate's right to attend a prison disciplinary hearing is one of the essential due process protections afforded by the Fourteenth Amendment."). According to Defendants, Plaintiff waived his right to attend his hearing because, despite repeated instructions, he refused to don the proper attire.

In resolving Plaintiff's Fourteenth Amendment claim, the R&R discusses in detail the evidence submitted by Defendants regarding Plaintiff's conduct and the basis for conducting the misconduct hearing in Plaintiff's absence. For instance, Defendant Mason asserts in an

4

affidavit that he told Plaintiff several times that he needed to be wearing his state-issued pants rather than his athletic shorts in order to attend the misconduct hearing. (Dkt. No. 19, Ex. A, Mason Aff.) Defendant Maki, the hearing officer for Plaintiff's misconduct hearing, does not presently recall what happened, but she recorded in the hearing report that she heard Defendant Mason repeatedly tell Plaintiff that shorts were not permitted. (Dkt. No. 19, Maki Aff.; Compl., Ex. 3, Major Misconduct Hr'g Report.) According to the hearing report, Defendant Maki found that Plaintiff waived his right to attend the hearing because he refused to dress appropriately as directed by the officer. (*Id.*)

The R&R does not, however, discuss or address the evidence submitted by Plaintiff, such as his affidavit and statement of what occurred. (*See* Dkt. No. 32, Pl.'s Aff.) A motion for summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if a reasonable jury could find for the nonmoving party on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a reasonable jury could find for the nonmoving party, the Court must view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007).

Considering all the evidence, including the affidavit submitted by Plaintiff, the Court

5

will affirm the disposition of the R&R because there is no genuine dispute that Defendants gave Plaintiff an opportunity to receive the process to which he was entitled, but that he waived this right by refusing to comply with instructions given to him by prison authorities.

Plaintiff asserts that, based on the prison rules and policies, there is a factual dispute as to whether Plaintiff was required to wear slacks to the misconduct hearing. The Court construes this as an argument that the prison regulations did not provide him with notice that failure to wear slacks would result in waiver of his right to attend his misconduct hearing. The Alger Maximum Security Correctional Facility General Population Housing Unit Rules ("Housing Rules") state, in relevant part:

> 25. Any disruptive or threatening behavior exhibited prior to a prisoner coming out of his cell or when out of his cell will result in the prisoner not being permitted to attend the activity or the activity terminated.
>
> 27. When called out for any detail, callout, yard or any activity other than showers, prisoners must be dressed in accordance with OP 04.07.110 and ready for release. If prisoners are not ready or properly dressed at the time of their activity they will not be released.
>
> 35. Prisoners may wear athletic shorts to the dining hall, yard activities, while in their cell and for gym and weight callouts.

(Dkt. No. 19, Ex. B-1.) Michigan Department of Corrections ("MDOC") Policy Directive 04.07.110, Attachment B, details the circumstances in which prisoners are required to wear state-issued slacks:

> Prisoners are required to wear state-issued trousers/slacks . . . for . . . Assignments, unless other state-issued special assignment clothing is required by the prisoner's work assignment.

6

MDOC Policy Directive 04.07.110B CFA ¶ C (06/08/2005). It further provides that:

> Prisoners may be allowed to wear state-issued undershirts/athletic shirts/athletic shorts as outer garments while participating in athletic activities, during yard, and in the housing unit. The state-issued items may also be worn in the dining room.
>
> State-issued athletic clothing may *not* be worn for visits, or for assignments, unless they have been identified as part of the special assignment clothing (e.g., prisoner's work assignment is in the recreation area).

*Id.* at ¶¶ E, F (emphasis added). The policy directive does not expressly refer to misconduct hearings. Defendants contend that a misconduct hearing is an assignment or callout prohibiting athletic attire. Plaintiff argues that the term "assignment" in the policy directive is best interpreted to mean only work assignments, because those are the only types of assignments mentioned in the directive. Some language in the Housing Rules tends to support Plaintiff's reading of the policy directive. The Rules indicate that "Kitchen whites and other special work clothes may be worn only on assignment or going to or returning directly from that assignment." (Housing Rules ¶ 28.) However, Plaintiff's interpretation of the policy directive would make the term "work assignment" redundant. The more natural reading is that "work assignment" is a specific example of the broader category of assignments. But even under the latter reading, the policy directive does not clearly indicate that a misconduct hearing is an assignment.

Paragraph 35 of the Housing Rules states the circumstances in which a prisoner "may" wear athletic shorts. (*See* Dkt. No. 19, Ex. B-1, at ¶ 35.) Those circumstances do not include misconduct hearings, though the Rules do not expressly indicate that athletic shorts may *not* be worn to misconduct hearings.

7

At best, Plaintiff can argue that the written policies and rules are facially ambiguous on the issue of whether athletic shorts are prohibited, or slacks are required, at a major misconduct hearing. However, the written requirements are not the only evidence in the record on this issue. Defendant Mason states in an affidavit that attendance at a major misconduct hearing is "considered" an "assignment (callout)" for which athletic clothing may not be worn. (Dkt No. 19, Mason Aff. ¶ 7.) Plaintiff objects to this statement on the basis that Defendant Mason does not have personal knowledge of the underlying facts and because he is not competent to testify as to this issue. As to his personal knowledge, it is undisputed that Defendant Mason is and was a corrections officer with the Michigan Department of Corrections. Plaintiff does not indicate why Defendant Mason is not competent to testify as to how the prison rules were understood or enforced in Plaintiff's institution. Even in the absence of Defendant Mason's affidavit, the other Defendants offer similar evidence that is not challenged by Plaintiff. Defendant Salo, the Assistant Resident Unit Supervisor at Plaintiff's facility, asserts:

> Housing Unit Rules at LMF do not permit prisoners to wear shorts to a major misconduct hearing. . . . Housing Unit Rule # 27 allows prisoners to wears [sic] shorts to dining hall, yard activities, while in their cell and for gym and weights callouts, only.

(Dkt. No. 19, Ex. B, Salo Aff. ¶ 4.) David Bergh, the warden of the prison facility, asserts, after referring to the Housing Rules, that "Plaintiff was not properly dressed to go to major court when he was wearing orange shorts . . . Stanley violated MDOC rules/policy/procedure when he refused to dress appropriately for major court." (Dkt. No. 19, Ex. D, Bergh Aff. ¶

5.) Plaintiff offers no evidence to dispute Defendants' evidence that a major misconduct hearing is *considered* an assignment or callout for which athletic shorts are prohibited. In other words, even assuming that the written policies are facially ambiguous, Plaintiff offers no evidence to challenge Defendants' assertions that the written rules and policies, as understood and applied, prohibit prisoners from wearing athletic shorts to disciplinary hearings.

Furthermore, even if the written rules and policies did not provide Plaintiff with notice that shorts were not appropriate attire for a misconduct hearing, there is no genuine dispute that the written policies did provide Plaintiff with notice, generally, of the need to be properly dressed when called out for any activity other than showers (*See* Housing Rules ¶ 27), and there is no genuine dispute that he had notice, in this particular instance, of the need to wear his state-issued slacks to the misconduct hearing. According to Plaintiff's affidavit, Defendant Mason notified Plaintiff that he needed to wear slacks rather than athletic shorts in order to attend the hearing. (Pl.'s Aff. ¶¶ 9-11.) Rather than attempt to comply, Plaintiff responded to Defendant Mason by questioning his authority. (*Id.* at ¶¶ 11-12.) Plaintiff's efforts to comply came *after* Defendants Mason and Salo had already departed. (*Id.* at ¶¶ 11, 13-14.) Due process does not require prison officials to accord prisoners the opportunity to attend a disciplinary hearing on their own terms, nor does it give prisoners leave to defy authority. Due process merely requires that officials afford prisoners a reasonable *opportunity* to attend a misconduct hearing. There is no genuine dispute that Plaintiff was

9

given this opportunity. Plaintiff's inability to be present for his hearing resulted from his own intransigence and refusal to comply with simple and reasonable instructions. Plaintiff cannot thwart prison discipline on the one hand and complain that he did not receive adequate process on the other. Even if Defendant Mason had wrongly interpreted or applied prison policies, which Plaintiff's evidence does *not* suggest, the administration and control of prisons would be seriously hampered if prisoners were permitted to question and reject an officer's application of those policies.

Plaintiff also contends that he was entitled to be present for the hearing because he did not waive his right to the hearing in writing. Policy Directive 03.03.105 provides that:

> The prisoner has the right to be present at his/her hearing; however, a hearing may be conducted without the prisoner if a finding is made on the record that the prisoner chose not to attend the hearing after proper notice was given or is so assaultive or disruptive that the hearing cannot be held with the prisoner present.

MDOC Policy Directive 03.03.105 ¶ CC (01/01/2007). Contrary to Plaintiff's assertions, there is no genuine dispute that the hearing officer found, on the record, that Plaintiff effectively chose not to attend the hearing by refusing to comply with the requirements communicated to him by Defendant Mason. Defendant Maki recorded that finding in the hearing report. (Compl., Ex. 3.) The Policy Directive cited by Plaintiff does not require a written waiver in order to make such a finding.[2] Plaintiff refers to the prison hearings handbook, which provides that:

---

[2]The Michigan statute governing prison disciplinary hearings also does not require written waivers in such circumstances. *See* Mich. Comp. Laws § 791.252 (noting that the hearings officer may proceed with the hearing if the prisoner "fails to appear after proper service of notice").

> A prisoner may waive or give up the 24-hour [notice] period, and any other right, so long as the waiver is made willingly and with understanding of the consequences . . . . The waiver by a prisoner of this or any other right shall be in written form, and signed by the prisoner.

(Dkt. No. 17, Ex. C-5, at 5.) However, the handbook itself notes that it is intended to be used as a "guide," and that discrepancies between the handbook and prison policy directives are resolved in favor of those policies. (Dkt. No. 17, Ex. C-8.) Even if the handbook purported to set forth prison procedural *rules* rather than guidelines, such rules would not define the requirements for constitutional due process. *See Levine v. Torvik*, 986 F.2d 1506 (6th Cir. 1993) (noting that the state does not have a federal due process obligation to follow all of its procedural rules), *overruled on other grounds in Thompson v. Keohane*, 516 U.S. 99 (1995); *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003) (citing *Levine*). It would be absurd to require a written waiver in circumstances where a prisoner refuses to comply with the requirements communicated to him. The state is not obligated to force a prisoner to avail himself of his right to attend a disciplinary hearing.

Plaintiff also contends that Rules 791.3315(3) and 791.5501(3) of the Michigan Administrative Code require a written waiver. Those rules are not applicable. The former states that a prisoner may waive the "24-hour notice requirement" in writing, and the latter provides that, "A prisoner may plead guilty to a minor misconduct and waive a hearing by signing a written waiver." Mich. Admin. R. 791.3315(3), 791.5501(3). Plaintiff did not waive the *notice* requirement or *plead guilty* to minor misconduct. Furthermore, the foregoing rules do not define the requirements of due process, as indicated in *Levine*.

11

Plaintiff also objects to statements made in Defendant Maki's affidavit regarding the requirements for waiver of the right to a hearing under the prison rules and policies; however, Plaintiff's objections are irrelevant because his claim fails to survive summary judgment even without those statements.

In summary, due process under the Fourteenth Amendment does not entitle prisoners to attend misconduct hearings on their own terms. There is no genuine dispute that Plaintiff was given the opportunity to attend his misconduct hearing but that he chose not to avail himself of that opportunity. Consequently, the Court agrees with the determination of the R&R that Plaintiff was afforded the process to which he was entitled and that summary judgment should be granted in favor of Defendants on his Fourteenth Amendment claim of violation of due process.

**B. First Amendment claim**

Plaintiff contends that he was denied the right to attend the misconduct hearing in retaliation for filing grievances against Defendant Mason. The R&R recommends dismissal of this claim because Plaintiff fails to allege any specific facts in support of his claim and, as such, it is purely conclusory. (R&R 7-8.) Plaintiff objects that his affidavit sets forth the specific facts, wherein he states that he told Defendant Salo:

> I wanted to go to my hearing, that the ticket was written in retaliation and that Mason could not deny me that right. . . . "I told him like I told you Salo several times before to stop playing homosexual games with me and stop playing with me."

(Pl.'s Aff. ¶ 12.) However, the foregoing statements do not add to Plaintiff's claim; they merely restate Plaintiff's speculation as to Defendant's motives. Moreover, they do not in

12

any way suggest that Defendant Mason declined to escort Plaintiff to the misconduct hearing in retaliation for Plaintiff's filing of grievances. Finally, to the extent Plaintiff contends that the prison rules provide support for Plaintiff's retaliation claim, as discussed herein, the prison rules are not inconsistent with Defendant Mason's instruction that Plaintiff wear slacks to the hearing, or with the determination of the hearing officer that Plaintiff effectively waived his right to attend his hearing. Therefore, upon review, the Court agrees with the reasoning and conclusion of the R&R that Plaintiff has failed to state a retaliation claim. The Court also agrees that Defendants are entitled to qualified immunity because Plaintiff cannot establish that his constitutional rights were violated.

### III. Conclusion

For the foregoing reasons, Plaintiff's objections will be overruled and Defendants' motion for summary judgment and/or for dismissal will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's objections to the Report and Recommendation (Dkt. No. 35) are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Report and Recommendation (Dkt. No. 34), together with the discussion herein, is **APPROVED** and **ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss and/or for summary judgment (Dkt. No. 16) is **GRANTED**.

The Court hereby **CERTIFIES** that an appeal of this action would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

A judgment will be entered that is consistent with this memorandum opinion and order.


Dated: March 29, 2010                         /s/ Robert Holmes Bell
                                              ROBERT HOLMES BELL
                                              UNITED STATES DISTRICT JUDGE